Good morning. May it please the court, Cynthia Jones for the appellant Peter Harrell. I would like to reserve three minutes for rebuttal time. This case concerns a university student, Peter Harrell, who expressed an unpopular view in an online class and was sanctioned as a result. The district court erred below and summary judgment was improper here for at least two reasons. First, Mr. Harrell showed a genuine issue of material fact that it was his viewpoint in opposition to law enforcement officers, who were also students in the class, that was the reason for his sanctions. And the second reason is that the record doesn't support the fact that it was a reason. The reason was he behaved very boorishly in class towards the teacher, towards the students, and he was a verbal bully. That's why they got after him. There's no dispute that Mr. Harrell's speech was unpleasant. He wasn't a particularly nice guy to participate with in the class. And if my boy's vice principal had had him in junior high school, he probably could have squared him away. But that didn't happen. That didn't happen here. And what we need to focus on at the summary judgment level is if— Tell me why Hazelwood doesn't apply. The position that Hazelwood doesn't apply, looking at Judge Reinhart's reasoning in Brown v. Lee, which we adopted wholesale in our briefing, when a speech in a school classroom, as in Hazelwood, where they were publishing a newspaper, bears the imprimatur of the school, if the public read it, would be under the Hazelwood standard. Here, if you have opposing viewpoints—for instance, you have Mr. Harrell, who is taking issue with knock-and-announce policies used by the students that are also law enforcement officers. He was abusing other students and wouldn't have been permitted in the classroom at all, would he? Well, I think here, in the context when the wording abused other students, I would argue that— Well, he said, I don't want to be around the guy anymore. It sounded like they took it as abuse. The student that wrote that he didn't want to be around anymore was a police officer, Brian Lovett, who, in complaining to the university administration, said he didn't want to engage with Harrell. Yes, he was unpleasant. We're not disputing that. But he also said that Mr. Harrell didn't want—had no intention of entering law enforcement. And that was Brian Lovett's words, and that's why he didn't want to engage in the class. And I think, taken as a whole, at the summary judgment level, if we put Mr. Harrell's speech side-by-side with Officer Barner's speech and Officer Wagner's speech and also Officer Lovett's speech, there is a reasonable inference that it was Mr. Harrell's viewpoint at the summary judgment stage as to why he was being sanctioned. The only complaints here came from law enforcement officers that were participating in the class. And the syllabus itself, in both the fall 2007 term and the winter 2008 term, discuss what the students can expect. They're talking about individual rights is against the government. They're talking about this upper-level course is very—and Professor Hawes was, my class is very stressful. We talk about police tactics. We talk about knock-and-announce policies. Those are the very things they were discussing. And when you take, again, at the summary judgment level, when you take it in light most favorable to Mr. Harrell, there is an inference that he was singled out for his viewpoint. And then turning to the second issue— his bullying through his speech. And, you know, it wasn't in a classroom. This was all done with computers, I guess. That's the way we educate people today. And so he's not in a classroom setting where he's looking at someone and being insulting. He's away someplace. A disembodied voice makes him very, very brave and very cocky. You know, there's a difference between being in a room and behaving the way he behaved, verbally, and being somewhere else and doing all this on a computer. You know, I'm struck by the fact that the law is probably not really clear in this area. And it seems to me these people that Harrell was suing are probably entitled to qualified immunity. And that would be the end of the story. We don't really need to get into any of the First Amendment issues at all. Our response to that, Judge Fletcher, would be looking to Healy v. James when they were faced with applying the First Amendment prodigy of cases in a, as Justice Powell put it, the factual background raises constitutional questions in a manner not heretofore passed by the court. But he held still that the First Amendment jurisprudence was beyond the constitutional, the constitutional question was beyond debate there. And I think this also ties into kind of combining back to Judge Walter's question about Hazelwood applying. Even if Hazelwood applied here, we could look to the Tenth Circuit case, which was cited by defendants for support in Axon Flynn v. Johnson. And there we had a university student. Hazelwood was applied. It was all of her First Amendment claims were dismissed on summary judgment. And the defendants had also brought up a qualified immunity claim. And there the Court found that even applying Hazelwood, they found the legitimate pedagogical concern test was a pretext for singling out her viewpoint, and that the constitutional question of applying a First Amendment law in the university was a constitutional question that was beyond debate. And I think here in the ---- Sotomayor, do you think this one's beyond debate? I think that going back and tying in Judge Pregerson's question about this being a classroom, I think based on both the defendants' representations in their briefing that even though it was an electronic classroom, it was a classroom nonetheless. And we agree with that as well.  And if we're looking at all of the, you know, for 90 years the Supreme Court has held that students do not shed their First Amendment rights at the schoolhouse gate, that the question of and drawing inferences in a light most reasonable to Mr. Harrell, when someone's viewpoint on a university college campus is singled out and sanctioned or attempted to be regulated, we have longstanding precedent that guides what the university officials could do. And another point on the qualified immunity is putting the cart before the horse. If you draw the inferences in light most reasonable, in a light most favorable to Mr. Harrell, then it's for a jury to decide whether or not his First Amendment rights were violated in that first prong of qualified immunity and then bring it on appeal. And I see I have limited time left. If there are no more questions from the panel at this point, I'd like to reserve for rebuttal. Thank you. Breyer. May it please the Court, Counsel, Janet Schreier, on behalf of the defendants, Southern Oregon University. I do want to address the qualified immunity question because I think that makes your decision very easy. And I want to start out by rebutting what my opponent just told you about qualified immunity. You need to decide a jury. And my honorable opponent. My honorable opponent. My esteemed opponent. She suggested there's a jury question about a constitutional right, and then you apply qualified immunity. That's exactly backwards. The Supreme Court has stated a number of times qualified immunity is an immunity from suit, and litigants are encouraged to assert qualified immunity before trial for trial judges to resolve it before trial so that the public officials do not have to go to trial if, in fact, there's qualified immunity. So I suggest that qualified immunity is a legal question for the Court to decide that in this instance, I think, is a relatively easy question. But you really would like for us to do Hazelwood, wouldn't you? Yes. I think Hazelwood is the correct standard, I think, for the reasons that Judge Graber set out in the Brown v. Lee opinion. But I think comparing the qualified immunity test requires the plaintiff to demonstrate both that the officials violated a constitutional right, and furthermore, that the right was clearly established at the time of the conduct in question, in this case, 2007-2008. There's no significant case law binding on this jurisdiction or pretty much anywhere from the time Hazelwood came out that provides any particular guidance as to whether, from the Supreme Court's point of view, the plaintiff has a right to university speech, and nothing in this Court beyond the case Brown v. Lee, in which Judge Graber wrote and Judge Reinhart dissented, about what the parameters for First Amendment protection is for student speech at the university level. So whatever test you may decide today in 2012 applies. The right, the constitutional right that plaintiff is asserting was not clearly established in 2007-2008, and therefore, the defendants are entitled to qualified immunity. The Ashcroft says, looking at what is clearly established, you can't just say, oh, the First Amendment applies generally to student speech, and you don't leave the First Amendment behind when you cross the threshold of the classroom. Ashcroft and other U.S. Supreme Court authorities says you have to look about whether the clearly established means fact-specific cases to the circumstances presented to the university officials in this case, confronted with the facts in this case. And I believe at the very minimum, and here it would involve university officials and dealing with a cyber classroom. And there are no cases that clearly establish that right if you decide that Hazelwood does not apply or there's a question about that. And I think you need to do nothing beyond look at the Brown v. Lee decision to see what the words of Judge Graber and in the dissent Judge Reinhart say. Judge Reinhart says the appropriate speech standard for college and graduate student speech remains an open question in this circuit, page 963, 964. He says Brown is not a precedent in our opinion. Our opinion leaves open the question what First Amendment standards apply to regulation of college and graduate student speech. He says there are a number of standards that could be applied, and he addressed several, but not all of them. Even Judge Graber, in her majority or in her opinion, whether it's a majority or not, we do not know with certainty that the Supreme Court would hold that Hazelwood controls the inquiry here. There's substantial debate. Scalia, why wouldn't Jacobs, the intermediates group, be applied here? Well, and that's another one, that Jacobs could be applied. That was a 2008 case from this Court and, you know, talked about a content-neutral standard, which is yet another standard. So we have the Hazelwood standard that I believe applies because this was clearly school-sponsored speech because it was curriculum-related. It was in the curriculum. It was required speech. Plaintiff is contending Tinker applies. Judge Reinhart said Tinker applies. And yet in the interim, then there's the Jacobs that involves content-neutral speech, and Jacobs suggests that there's yet a fourth category. And in our view, as set out in our brief … Well, and, you know, in Jacobs, we're concerned about furthering an important interest in maintaining a respectful classroom atmosphere and what, I mean, the university, I thought, was very, very patient and respectful and careful as they handled this situation, which I'm sure was trying to the teacher. And the university's action here was unrelated to the suppression of his speech and resulted in incidental restriction on his First Amendment freedoms and was no greater than necessary. You could fit it into Jacobs. I'm sorry. I missed the last words that you just said. You could fit this case into Jacobs' intermediate scrutiny. Absolutely. Yes. And you could also fit it into Tinker. I think that's right. Not only was there legitimate expectation of disruption in the classroom, there was actual disruption in the classroom and further legitimate expectation of more disruption because Plaintiff was belligerent and refused to change his manner of speech. And so I agree. We fit within Jacobs. We fit within Hazelwood. And we even fit within the Tinker rule. And that's why I think the easiest way you could choose one of those rules that applies, but it doesn't even matter. I think clearly it's … in our view, it's either Hazelwood or Jacobs. We fit within both of those. We meet those tests. So there's no constitutional violation at all in the first level of the qualified immunity inquiry. But even if you found there was some debate about that, it wasn't clearly established in 2007, 2008, if you found a constitutional violation. So either way, there's either qualified immunity or there's no constitutional violation, and therefore, the university's actions were acceptable either way. And I just want to address and rebut … You know, this whole concept of, you know, of immunity that's been brought into this area, which is supposed to save time, huh? It doesn't. Because that issue many times is resolved early on, and then there are appeals taken, and a lot of briefs are filed. And if you just had a trial and let it go to the jury, it would probably take a lot less time, and the jury could consider all those issues. You know what I'm saying? Yeah, I do. I think the point of the rules we set up, the more complex litigation becomes, the more time it takes, and I don't know that — that's just my view. I think the point of qualified immunity isn't that it isn't going to take the lawyers as much time to make the legal arguments to the court, whether it's at the trial court or before a court of appeals, but the parties, the public officials do not have to go through the trial process and are extricated from it, don't have to sit at counsel table at trial, and go through the rigors of trial. I think that's the policy behind the qualified immunity early resolution issue, not so much to save the lawyers and the judges the time, but it saves the parties the time, and of course, it saves the trial court the trial time and the expense and rigors of going through a jury trial. Well, then it takes the court of appeals a lot of time to sit through all this. When some of these matters, if they were trite, you might get through them in a day or a day and a half. This is true. There's no question that it takes time. I just wanted to direct you to Excerpt of Record 189, because I think Mr. Lovitz, the nature of his objection to the plaintiff's counsel discussed to the kind of speech that plaintiff had is quite different than what was represented. In his e-mail to the university, he says that he realizes he has to participate because it was an obligatory part of the class, but he said, I am sickened by the politics in Mr. Harrell's attempts at stirring everyone up. I notice he engages several of the others. Quite honestly, I don't have a desire to play games with an individual who has no intention of entering a field that I enjoy working and have for a number of years. I recognize my minimal participation may affect my grade. I'm writing you so I do care about my grades, but I don't need the garbage or game-playing. He's discussing the disruption involving the kind of speech that Mr. Harrell was engaging in, and he's not talking about the viewpoint in any event. I just wanted to point out ER page 189. So I look at my time is up, no constitutional violation. Even if there is, it was not clearly established standard, and therefore, we're entitled to affirmance of summary judgment based on qualified immunity. Thank you. If I may, Your Honors, address a couple of points. Was Mr. Harrell's speech unpleasant? Absolutely. Was he a jerk in the class? Yes. Was it enough to rise to a substantial fear of disruption? No. When police tactics were being discussed, the professor, in reaching out to all the students, said, people are descending into personal attacks. It wasn't just Mr. Harrell. It was the law enforcement officers who disagreed with Mr. Harrell, and Mr. Harrell didn't believe in some of the knock-and-announce policies. Did it offend the law enforcement officers? Of course, because they used those in their daily round out on the street, but this was in a classroom, and the inferences drawn in a light most favorable to Mr. Harrell, when you look at the context which this Court in Karp, when it looks at Tinker, says you must do, there is an inference that it was his viewpoint for which he was singled out. I would also like to point to the qualified immunity question and the case, the Ashcroft case, that is cited by counsel. There, we can distinguish that what those cases were concerned about is when law enforcement officers have split-second decisions to make on what kind of threat of physical retaliation to use, and they don't have a lot of time to think. And here, we can draw a distinction from those cases, the cases that were cited by counsel, that the university had due process obligations, they had a lot of time to think about looking at all of the facts before them, as is stated in the Karp decision. And I see that my time is up. Is there any more questions from the panel before I sit down? Yeah, I have one observation. Probably the best thing that ever happened to Mr. Harrell was that he has you for a lawyer. Thank you, Judge Ferguson. All right.  Thank you. Thank you.
judges: Walter, Fletcher, Pregerson